Argued and submitted February 12, 2015, reversed and remanded on plaintiff's claims of race discrimination and race-based retaliation, otherwise affirmed June 2, 2016

Javier MEDINA,
*Plaintiff-Appellant,*

*v.*

STATE OF OREGON;
and Department of Fish and Wildlife,
an agency of the State of Oregon,
*Defendants-Respondents,*

*and*

Kenneth FRISBY,
*Defendant.*

Wasco County Circuit Court
1200285CC; A156119

377 P3d 626

William J. Macke argued the cause and filed the briefs for appellant.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for respondents. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Tiffany Keast, Assistant Attorney General.

Before Egan, Presiding Judge, and Hadlock, Chief Judge, and Wilson, Senior Judge.*

---

* Hadlock, C. J., *vice* Nakamoto, J. pro tempore.

**EGAN, P. J.**

Plaintiff, a former employee of the Oregon Department of Fish and Wildlife (ODFW), appeals from a general judgment of dismissal with prejudice, which the trial court entered after granting defendants' motion for summary judgment on plaintiff's claims of race discrimination, retaliation for complaining of race discrimination, and retaliation for engaging in whistleblower activity.[1] Plaintiff assigns error to the trial court's summary judgment rulings, arguing that he presented a *prima facie* case of each of those claims, and thus defendants were not entitled to judgment as a matter of law. We conclude that the trial court erred in granting defendants summary judgment on plaintiff's race discrimination and retaliation claims, but did not err in granting defendants summary judgment on the whistleblower retaliation claim. Accordingly, we reverse in part and affirm in part.

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. ORCP 47 C; *Robinson v. Lamb's Wilsonville Thriftway*, 332 Or 453, 455, 31 P3d 421 (2001). There is no genuine issue as to a material fact when "no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." ORCP 47 C. In reviewing the trial court's summary judgment ruling, we view the facts and all reasonable inferences that may be drawn from them in the light most favorable to the nonmoving party. *Robinson*, 332 Or at 455.

The facts, viewed in the light most favorable to plaintiff, are as follows. Plaintiff began working for ODFW in June 1999 as a temporary worker in a laborer position. In 2000, ODFW hired plaintiff permanently as a fish and wildlife technician (Tech 1). In 2005, plaintiff was disciplined for the unauthorized use of an agency cell phone. In 2007, plaintiff was promoted to Tech 2. Shortly thereafter, ODFW reclassified its "tech" positions, eliminating

---

[1] The trial court also granted defendants summary judgment on plaintiff's claim of retaliation for seeking workers' compensation benefits. Plaintiff does not challenge that ruling on appeal.

the Tech 1 through 3 designations and replacing them with two classifications—Junior Tech and Senior Tech. Plaintiff was reclassified to Junior Tech under the new classification system.

On November 12, 2009, plaintiff complained to ODFW that, due to bias at his place of employment (The Dalles Screen Shop), he had never been promoted and was still a Junior Tech. On November 20, 2009, ODFW human resources analyst McNew responded that she was "unable to effectively respond to a general claim of bias." On December 16, 2009, plaintiff clarified that his claim was based on racial bias due to his Hispanic ethnicity, and, on March 25, 2010, McNew issued a report stating that she had conducted an investigation into the hiring and promotions practices at The Dalles Screen Shop and concluded that there had been no race- or ethnicity-based bias against plaintiff.

On April 20, 2010, ODFW issued a "just cause" reprimand to plaintiff for returning one day late from vacation without authorization. On May 1, 2010, plaintiff's supervisor completed a performance evaluation that indicated that plaintiff's performance was "unsatisfactory" in the "Individual Characteristics" and "Teamwork/Customer Service/Workplace" categories. On May 24, 2010, The Dalles Screen Shop changed its leave policy to prohibit vacations of longer than two consecutive weeks without special authorization. Between May 2010 and February 2012, ODFW formally disciplined plaintiff six times for alleged performance issues regarding time sheet completion and leave requests.

Sometime in 2011, plaintiff complained to coworkers regarding a directive from his supervisor, Frisby, to attribute time spent on constructing a commercial-size fish-smoker to the Mitchell Act, a federal fish grant. Plaintiff believed that the use of federal funds for that project was illegal. He also discussed his concerns with Frisby himself, with McNew, and with a reporter at the *Oregonian*.

On July 26, 2011, plaintiff interviewed for a Senior Tech position at The Dalles Screen Shop. He scored higher than any of the other candidates during his interview. Rather than hire plaintiff, ODFW decided to reopen the position and conduct additional interviews. After the second

round of interviews, plaintiff had the highest total score of any of the candidates, but was not granted the promotion.

On July 27, 2011, ODFW issued a notice of discipline to plaintiff on the basis that plaintiff had failed to report an injury in a timely manner.

On August 18, 2011, McNew made a note regarding an incident where plaintiff drove a state vehicle to his house on his way to work in the field because plaintiff had left his wallet at home. The note indicated that plaintiff "could get discipline not likely fire him." Plaintiff stated that two non-Hispanic employees had also driven state vehicles to their homes during lunch breaks, but were never disciplined for doing so. On February 3, 2012, ODFW issued plaintiff a prediscipline notice based on that incident and based on several instances of allegedly failing to follow protocol in filling out leave request forms.

On February 10, 2012, plaintiff signed a "last chance agreement," which stated that plaintiff was being given a final opportunity to comply with ODFW policies and procedure. The agreement detailed ODFW's employment expectations of plaintiff, specifically with regard to leave time and requests.

Plaintiff was placed on administrative leave on March 16, 2012, pending an investigation into an alleged breach of the last chance agreement for failing to fill out an amended leave authorization form on the day following a medical appointment for a workers' compensation claim. On March 30, 2012, ODFW issued plaintiff a predismissal notice for alleged violations of his paid administrative leave and the terms of the last chance agreement. On April 11, 2012, ODFW terminated plaintiff's employment.

Plaintiff filed a complaint against defendants, alleging, in part that: (1) defendants had discriminated against him by failing to give him equal consideration for promotions and transfers relative to non-Hispanic employees, in violation of ORS 659A.030; (2) defendants had retaliated against him when he complained about that racial discrimination; and (3) defendants had retaliated against him for engaging in whistleblower activities. Specifically, plaintiff

alleged that he had applied for numerous promotions and was passed over every time, "often [for] less skilled, less educated, less experienced employees who were non-Hispanic." He also alleged that he had begun to experience retaliation from his supervisor after he had complained to ODFW that his supervisor had failed to promote him because of racial bias. He alleged further that ODFW "took immediate retaliatory action" against him after he had complained to his coworkers about the alleged Mitchell Act violation.

Defendants filed a motion for summary judgment, arguing that the allegations, even when viewed in the light most favorable to plaintiff, did not create any issues of material fact with regard to plaintiff's claims, and that defendants were entitled to judgment as a matter of law as to those claims. Defendants argued that plaintiff's race discrimination and retaliation claims were time barred because the alleged discriminatory actions—plaintiff being denied promotions and transfers—took place more than 180 days before notice was served, as required by ORS 30.275(2)(b).[2] With regard to plaintiff's whistleblower retaliation claim, defendants contended that they were entitled to summary judgment because: (1) plaintiff's belief that defendants had abused their authority by violating the Mitchell Act was unsubstantiated and unreasonable; (2) in any event, plaintiff never disclosed his suspicions to any managerial employee within ODFW, any member of the federal government, or the police; and (3) there was no proof that plaintiff's suspicions resulted in any disciplinary actions against him.

Plaintiff opposed summary judgment, contending that genuine issues of material fact precluded it and that defendants were not entitled to judgment as a matter of law. Plaintiff first challenged defendants' timeliness argument, contending that his race discrimination and retaliation

---

[2] ORS 30.275 requires that notice of a claim against a public body be given as follows:

"(2) Notice of claim shall be given within the following applicable period of time, not including the period, not exceeding 90 days, during which the person injured is unable to give the notice because of the injury or because of minority, incompetency or other incapacity:

"(a) For wrongful death, within one year after the alleged loss or injury.

"(b) For all other claims, within 180 days after the alleged loss or injury."

claims were timely because they fell within the statute of limitations prescribed by ORS 659A.875 and because, under the Lilly Ledbetter Act, 42 USC § 2000e-5(e)(3)(A), his discrimination and retaliation claims resulted in diminished pay and thus the statute of limitations renewed at each paycheck. Plaintiff also argued that the temporal proximity between his complaint of discrimination and the series of disciplinary actions that he faced supported an inference that he was being disciplined in retaliation for claiming that Frisby had discriminated against him because of racial bias. Plaintiff opposed summary judgment on his whistleblower retaliation claim on the basis that his belief that ODFW had illegally used federal grant money to build a commercial smoker was not only reasonable but correct. Plaintiff contended that he disclosed his suspicions to coworkers, McNew, Frisby, and a reporter at the *Oregonian*. He argued that the temporal proximity between his complaints and his termination created an inference of retaliation for whistleblower activity.

The court granted defendants' motion for summary judgment, with prejudice, finding that "no issue of material fact" existed and that defendants were entitled to judgment as a matter of law. In its oral ruling made at the conclusion of the summary judgment hearing, the court explained that, with regard to the race discrimination and retaliation claims, it was not granting the motion based on defendants' timeliness argument but rather was granting the motion because there was "no indication of racial animus in any way, shape or form" on the record provided. With regard to plaintiff's whistleblower retaliation claim, the court stated that it could not "find from the record that [plaintiff] effectively blew the whistle." That is, although plaintiff may have complained or mentioned his suspicions to coworkers and to an employee of the *Oregonian*, there was no indication that ODFW management was aware of plaintiff's complaints, as required to support an inference that his complaints resulted in retaliation.

Plaintiff challenges the trial court's summary judgment ruling, arguing that genuine issues of material fact existed on each of his claims and that defendants were not entitled to judgment as a matter of law. Plaintiff contends

that, viewing the evidence and drawing all reasonable inferences in his favor, a jury could have reasonably inferred that ODFW had discriminated against him because of his race. Specifically, plaintiff submitted deposition testimony that (1) he was passed over for promotions in favor of less qualified Caucasian applicants; (2) ODFW reopened the Senior Tech position rather than giving it to plaintiff, the candidate with the highest score after the initial interview process; (3) plaintiff was disciplined seven times between April 2010 and March 2012; (4) Frisby only recalled disciplining one other employee during his time as manager of The Dalles Screen Shop; (5) in May 2010, The Dalles Screen Shop instituted a vacation policy that plaintiff claimed affected only him; and (6) plaintiff was disciplined for using a state vehicle for personal business, but two non-Hispanic employees were not disciplined for the same conduct. Plaintiff also argues that the court erred in granting summary judgment on his race-based and whistleblower retaliation claims because the temporal proximity between plaintiff's complaints and ODFW's course of discipline leading up to his termination created an inference that ODFW was retaliating against plaintiff for making those complaints.[3]

Defendants respond that the trial court correctly granted them summary judgment because no objectively reasonable trier of fact could find that defendants disciplined plaintiff because of his race, or that plaintiff was disciplined in retaliation for complaining of racial bias. Defendants contend that the record is devoid of any "direct evidence of a discriminatory motive for discipline" and that plaintiff failed to demonstrate that similarly situated non-Hispanic employees were not disciplined for committing the same misconduct that plaintiff committed. With respect to plaintiff's

---

[3] Plaintiff also renews his argument that his race discrimination and retaliation claims were timely, but provides an entirely new argument to support his position. Defendants respond that plaintiff's argument on appeal amounts to a concession on some points. Defendants do not identify timeliness as an alternate ground for affirmance of the court's summary judgment ruling, nor do they develop an argument on that basis. Because the trial court explicitly stated that it was granting summary judgment on the ground that plaintiff had failed to produce evidence sufficient to create a genuine issue of material fact and not because the claims were untimely, we do not further address the parties' arguments regarding the timeliness of plaintiff's claims.

race-based retaliation claim, defendants argue that plaintiff failed to demonstrate that he had suffered an adverse effect as a result of any of the disciplinary actions taken against him. Moreover, defendants argue that, because plaintiff had been disciplined for misconduct prior to his complaint of racial bias, and because the only "materially adverse" action plaintiff faced (his termination) occurred years after his complaint, no reasonable trier of fact could infer that ODFW's disciplinary action was carried out in retaliation for plaintiff's complaint of racial bias. Lastly, defendants argue that we should not review plaintiff's challenge to the court's ruling on his whistleblower retaliation claim because plaintiff failed to sufficiently development his argument in support of his assignment of error.

We agree with plaintiff that defendants were not entitled to judgment as a matter of law on his claims of race discrimination and retaliation. We also conclude that plaintiff's contentions concerning his whistleblower retaliation claim were reviewable on appeal. However, with regard to that claim, we find no error in the court's summary judgment ruling.

We begin with plaintiff's claim of race discrimination. ORS 659A.030(1) prohibits employers from discriminating on the basis of "race, color, religion, sex, sexual orientation, national origin, marital status or age." To establish a *prima facie* case of racial discrimination based on the failure to promote, plaintiff must prove by a preponderance of the evidence that he applied for an available position, but was rejected under circumstances that give rise to an inference of unlawful discrimination. *Durham v. City of Portland*, 181 Or App 409, 421-22, 45 P3d 998 (2002); *Henderson v. Jantzen, Inc.*, 79 Or App 654, 657-58, 719 P2d 1322, *rev den*, 302 Or 35 (1986). Plaintiff's *prima facie* burden is "so minimal that it is virtually impervious to a motion based on evidentiary insufficiency." *Callan v. Confed. of Oreg. Sch. Adm.*, 79 Or App 73, 77 n 3, 717 P2d 1252 (1986).

Viewing the record in the light most favorable to plaintiff, we conclude that he established a *prima facie* case of racial discrimination, and thus summary judgment should not have been granted for defendants. Plaintiff established

that he applied for a Senior Tech position and scored higher than any other applicant during the initial interview process, but that ODFW reopened the position rather than giving it to plaintiff. He also established that, although his total overall score was higher than that of any of the other applicants in the first and second interview phases, he was not granted the promotion.

Defendants argue that the record is devoid of any direct evidence of a discriminatory motive for ODFW's failure to promote plaintiff. However, as plaintiff notes, "proof of [discriminatory motive] is rarely direct and often, necessarily, circumstantial and inferential." *Wheeler v. Marathon Printing, Inc.*, 157 Or App 290, 303, 974 P2d 207 (1998). Plaintiff introduced evidence that he had been disciplined on seven occasions between April 2010 and March 2012, and that non-Hispanic employees had not been disciplined for the same conduct. Specifically, plaintiff adduced evidence that he had been disciplined for using a state vehicle for personal business, while two non-Hispanic employees were not disciplined for doing the same thing. Indeed, Frisby only recalled disciplining one other employee during his entire tenure as manager of The Dalles Screen Shop. A rational trier of fact could infer from that evidence that defendants denied plaintiff a promotion because of his race. Thus, the trial court erred in granting defendants summary judgment on that claim. *See Henderson*, 79 Or App at 657-58.

Likewise, the court erred in granting defendants summary judgment on plaintiff's race-based retaliation claim. To establish a *prima facie* case of race-based retaliation under ORS 659A.030(1)(f),[4] plaintiff had to demonstrate that (1) he engaged in the protected activity of complaining of racial discrimination, (2) he was subject to discriminatory action, and (3) the discriminatory action was taken against him because of his protected complaint. *PSU Association of University Professors v. PSU*, 352 Or 697, 709, 291 P3d 658 (2012). Plaintiff argues that he satisfied that burden

_____

[4] ORS 659.030(1)(f) provides that it is an unlawful employment practice

"[f]or any person to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful practice, or because that other person has filed a complaint, testified or assisted in any proceeding under this chapter or has attempted to do so."

by establishing that he made a formal complaint of racial discrimination in the workplace, and that a course of disciplinary action began less than a month after ODFW found plaintiff's complaint to be baseless. Indeed, the evidence shows that, between April 2010 and March 2012, plaintiff was disciplined seven times and then terminated. Plaintiff argues that the temporal proximity between his complaint and the course of discipline that followed gives rise to an inference of retaliatory behavior.

Defendants remonstrate that there was no evidence that plaintiff was terminated because of retaliation, but rather that plaintiff was fired because of his long history of "unreliability and misconduct." They also argue that some of the disciplinary actions on which plaintiff relies could not form a basis for his retaliation claim because they were not "materially adverse." We disagree. To begin, we reject defendants' argument that some of the disciplinary actions relied on by plaintiff—namely, the prediscipline notice, last chance agreement, investigatory meeting, and placement of plaintiff on administrative leave—were not adverse under Oregon's retaliation statute. Defendants characterize those actions as "mere steps toward possible discipline— discipline that might not even occur." In this case, however, each of those disciplinary actions formed the basis for plaintiff's eventual termination. Indeed, plaintiff's termination was a direct consequence of his violation of the terms of his administrative leave and the last chance agreement. Because those disciplinary actions were predicates to plaintiff's termination and not mere steps toward theoretical discipline, they were materially adverse to his employment and sufficient to support a retaliation claim.

We also disagree with defendants that the record provides no evidence of retaliation. Plaintiff established that he was subject to a series of disciplinary actions—seven times in two years—beginning less than one month after his formal complaint about racial bias in the workplace was rejected. However, in the 10 years that plaintiff worked for ODFW that preceded his complaint, plaintiff had been disciplined only once, for unauthorized use of an agency cell phone. A reasonable trier of fact could infer from the timing of the disciplinary actions that they were the result of

plaintiff's having complained of racial discrimination. We reject defendants' contention that there was no proof of retaliation because ODFW demonstrated legitimate reasons for plaintiff's termination. "A plaintiff's *prima facie* case does not disappear merely because a defendant asserts a nondiscriminatory reason which may or may not persuade the trier of fact." *Henderson*, 79 Or App at 658. As plaintiff notes, whether the motive for plaintiff's termination was retaliatory or legitimate is a question of fact for the jury to decide. Thus, the trial court erred in granting defendants summary judgment on plaintiff's race-based retaliation claim.

Plaintiff also challenges the court's summary judgment ruling on his whistleblower retaliation claim. Defendants argue that plaintiff's claim is not adequately developed for this court's review. We disagree. Accordingly, we turn to the merits of the whistleblower retaliation claim. ORS 659A.203 provides, in part:

"(1) * * * [I]t is an unlawful employment practice for any public employer to:

"* * * * *

"(b) Prohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of:

"(A) A violation of any federal or state law, rule or regulation by the state, agency or political subdivision[.]

"* * * * *

"(2) No public employer shall invoke or impose any disciplinary action against an employee for employee activity described in subsection (1) of this section * * *."

The trial court granted defendants' motion for summary judgment, in which defendants argued that (1) plaintiff's suspicions about the fish smoker were unsubstantiated and unreasonable; (2) plaintiff did not "disclose" his suspicions as that term is contemplated by ORS 659A.203; and (3) even if plaintiff's complaints were "disclosures," plaintiff failed to prove that he was disciplined because of them. We conclude that plaintiff did "disclose" his good faith suspicions as that term is contemplated in ORS 659A.203, but that he

failed to demonstrate a causal link between his disclosure and any disciplinary action taken against him.

We begin with defendants' argument that plaintiff failed to "blow the whistle." We analyzed the disclosure requirement of ORS 659A.203 in *Bjurstrom v. Oregon Lottery*, 202 Or App 162, 120 P3d 1235 (2005). In that case, the plaintiff had made several complaints about managerial and personnel issues in the workplace. After disclosing those concerns to his supervisor and to human resources representatives, the plaintiff had several meetings with human resources representatives to discuss those concerns, which resulted in a formal investigation by the agency. We determined that, under those circumstances, the plaintiff's interagency complaints were "disclosures" entitled to whistleblower protection under the statute. *Id.* at 171. In doing so, we relied on the history of the enactment of Senate Bill (SB) 1051 (1989), during which employee witnesses testified to numerous instances of alleged retaliation for reporting wrongdoing to officials within the employees' agencies. *Id.* at 169-71.

Here, plaintiff presented evidence that he spoke with several nonmanagerial coworkers, his supervisor Frisby, human resources representative McNew, and a reporter at the *Oregonian* about his suspicions that Frisby had illegally ordered employees to code work done on the fish smoker to the Mitchell Act. With regard to plaintiff's conversations with the nonmanagerial employees and the *Oregonian* reporter, plaintiff failed to present evidence that ODFW officials were aware of those comments, and thus they do not qualify as disclosures under ORS 659A.203. However, viewing the evidence in the light most favorable to plaintiff, a reasonable juror could find that plaintiff disclosed his suspicions to agency officials when he discussed those suspicions with Frisby and McNew. Indeed, the evidence demonstrated that both Frisby and McNew were involved in the disciplinary proceedings that preceded plaintiff's termination, and were thus ODFW officials for purposes of the whistleblower protection statute. We note that, although plaintiff stated in his deposition that he did not report his suspicions to any "managerial level employee" of ODFW, the evidence demonstrates that Frisby was a manager of The Dalles Screen Shop and

that McNew was an analyst with human resources. In any event, ORS 659A.203 does not require disclosure to a "managerial employee," and the evidence demonstrates that Frisby and McNew had authority or influence in the disciplinary decisions that affected plaintiff's employment. We therefore disagree with the court's determination that plaintiff failed to "effectively blow the whistle."

However, we agree that plaintiff failed to present *prima facie* evidence of a causal connection between his disclosures and any of the disciplinary actions taken against him. Plaintiff failed to present evidence connecting his complaints to Frisby and McNew with the disciplinary actions that occurred between April 2010 and March 2012. There was no evidence as to when plaintiff confronted Frisby about the fish smoker, or as to Frisby's response to that complaint. Plaintiff merely stated, "I did mention to Frisby a couple times that this activity, because he was nervous. *He came a couple times saying, I wish this thing was over. I don't want people to see—the public. I don't want the public to be aware that we're building this with enough of—their money."* (Emphasis added.) That testimony suggests that Frisby shared in plaintiff's concerns about the fish smoker, and no reasonable juror could infer from that statement that Frisby disciplined plaintiff in retaliation for that conversation.

With regard to McNew, plaintiff stated that he discussed his concerns about the fish smoker with her during disciplinary meetings, but did not clarify which disciplinary meetings he was referring to. However, the only inference that can be drawn from this record is that plaintiff complained to McNew about the fish smoker during his meetings with her regarding his time sheet completion and leave requests. Thus, the series of disciplinary actions that led to plaintiff's termination had already begun by the time plaintiff voiced his concerns to McNew, and plaintiff has failed to demonstrate a causal connection between his disclosure and those disciplinary actions. *See, e.g., Ramsey v. City of Philomath*, 182 Fed Appx 678, 680 (9th Cir 2006) ("Where the decision to take an adverse employment action is made prior to any protected activity, no factfinder could find the requisite causal link between the employment action and

the protected conduct."). Thus, we conclude that plaintiff failed to establish a *prima facie* case of whistleblower retaliation, and the trial court did not err in granting defendants summary judgment on that claim.

In sum, the trial court did not err in granting defendants summary judgment on plaintiff's whistleblower retaliation claim, but erred in granting defendants summary judgment on plaintiff's race discrimination and retaliation claims. A reasonable trier of fact could infer from the evidence presented that defendants denied plaintiff a promotion because of his race, and then retaliated against him after he complained of racial bias, and thus defendants were not entitled to judgment as a matter of law.

Reversed and remanded on plaintiff's claims of race discrimination and race-based retaliation; otherwise affirmed.